**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **KIMBERLY P. GORDON,** | * |
| Plaintiff, | * |
| v. | Case No.: GJH-17-2835 |
| | * |
| **CIGNA CORPORATION,** *et al.*, | |
| | * |
| Defendants. | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Kimberly P. Gordon has sued Defendant CIGNA Corporation ("Defendant") for ERISA violations and breach of contract arising from its handling of her deceased husband's life insurance benefits.[1] ECF No. 1. This is Plaintiff's second such lawsuit against Defendant in this Court, having previously unsuccessfully sued Defendant (along with her husband's former employers) in 2016. *See Gordon v. CIGNA Corp., et al.*, No. 16-RWT-238. Now pending before the Court is Defendant's Motion to Dismiss, ECF No. 14, arguing that Plaintiff's claims are time-barred and precluded pursuant to the doctrine of *res judicata*. The Motion has been fully briefed, and the Court heard arguments from the parties at a June 19, 2018 Motion Hearing. ECF No. 26. For the reasons that follow, Defendant's Motion is granted.

---

[1] Mrs. Gordon also names Life Insurance Company of North America, Inc., as a defendant and explains that this entity is a "wholly-owned subsidiary of CIGNA." ECF No. 1 ¶ 10. Given the related nature of the parties and the fact that they are being represented by the same counsel, the Court refers to CIGNA Corporation and Life Insurance Company of North America, Inc., collectively as "Defendant" or "CIGNA."

**I.     BACKGROUND**[2]

Plaintiff Kimberly Gordon is the surviving wife of the deceased Stephen Gordon, who worked for Oil Price Information Service, LLC ("OPIS") from March 25, 2013 to October 27, 2013. ECF No. 1 ¶¶ 15, 30. During this time, Mr. Gordon was provided with various employee benefits, including an automatic $50,000 in life insurance from OPIS' parent company, UCG Holdings, and supplemental life insurance from CIGNA, of which he enrolled in a $250,000 coverage plan. *Id.* ¶¶ 17, 18, 26. Mr. Gordon died in January of 2014, and Plaintiff submitted a benefits claim to CIGNA for $300,000. *Id.* ¶¶ 32, 34. In a letter dated September 5, 2014, Defendant notified Plaintiff that her claim was approved for $150,000, and that the money had been placed in a "Cignassurance" account, a "retained asset account,"[3] *id.* ¶¶ 37–38, with an "attractive" interest rate "comparable to a money market checking account." ECF No. 14-3 at 2.[4] The letter explained that the interest rate was adjusted weekly, was based upon "the previous week's Bank Rate Monitor Index (BRM) or any successor money market index," and that she could call a toll-free number to receive the current rate. *Id.* at 4. The letter further explained that Plaintiff could "keep [her] money in this account for as long as [she] like[d]," or "can write a draft for the total amount of the account at any time." *Id.* at 2–3. On September 12, 2014, Plaintiff's lawyer sent a response letter demanding payment of the funds in full and noting her objection to the amount she was approved for and to the funds being placed in a Cignassurance

---

[2] Unless otherwise stated, the background facts are taken from Plaintiff's Complaint, ECF No. 1, and are presumed to be true.

[3] When distributing benefits through a "retained asset account," "an insurance company does not deposit any funds into the account. Rather, it merely credits the account with the benefits, and when a beneficiary writes a check on the account, the insurance company transfers funds into the account to cover the check. Until that time, the insurance company retains the money owed to the beneficiary (the "retained assets"), and can invest the retained assets for its own profit." *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 411–12 (3d Cir. 2013).

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

account. ECF No. 22 at 6–7. On September 23, 2014, Plaintiff received a "closing statement" from Defendant, which included interest at the rate of 0.110%. ECF No. 1 ¶ 38.

On January 27, 2016, Plaintiff filed a lawsuit against Defendant, UCG and OPIS over the fund disparity, arguing that she was entitled to the full $300,000 she requested. *See Gordon v. CIGNA Corp.*, 890 F.3d 463 (4th Cir. 2018) (the parties refer to this case as "*Gordon I*," which the Court adopts). In *Gordon I*, summary judgment was granted in favor of Defendants, which the Plaintiff appealed and the Fourth Circuit affirmed. *Id.* On September 21, 2017, Plaintiff filed this Complaint against Defendant, alleging violations of ERISA and breach of contract. ECF No. 1. Specifically, Plaintiff alleged that Defendant engaged in prohibited transactions and breached its fiduciary duty by placing the Plaintiff's funds in a Cignassurance account and by setting the interest rate applied to the account. ECF No. 1 ¶ 53. On November 22, 2017, Defendant filed a Motion to Dismiss, alleging that Plaintiff's ERISA claims are time-barred, barred by the doctrine of *res judicata*, and fail to state a claim, and that her breach of contract claim is preempted by ERISA and time-barred. ECF No. 14-1.

## II.     STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's

3

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. DISCUSSION

Defendant argues that Plaintiff's claims are barred by both the applicable statute of limitations and the doctrine of *res judicata*. The Court will turn to those defenses after considering which documents it may consider in assessing Defendant's Motion.

### A. Consideration of Documents

Although, as a general rule, evidence extrinsic to the Complaint should not be considered at the Rule 12(b)(6) stage, the Fourth Circuit has held that when a defendant attaches a document to its motion to dismiss, "a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do

4

not challenge its authenticity." *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir. 1999); *see also Parrino v. FHP, Inc.,* 146 F.3d 699, 705–06 (9th Cir. 1998). In *American Chiropractic Association v. Trigon Healthcare, Inc.*, the Fourth Circuit reasoned that "[t]he rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." 367 F.3d 212, 234 (4th Cir. 2004) (quotations omitted). The Fourth Circuit has previously cited with approval Second Circuit cases for the proposition that "a document is integral to the complaint where the complaint relies heavily upon its terms and effect." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (internal quotation marks omitted) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). On the other hand, if the complaint includes only a few quotes from a document and the plaintiff's claims "do not turn on, nor are they otherwise based on, statements contained" in the extrinsic document, then the document is not integral to the complaint. *Id.* Courts in this Circuit have reasoned that an integral document is one that by its "very existence, and not the mere information it contains*,* gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011). As examples, "courts have found integral the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute." *Id.* n.4.

Here, the Court considers at the 12(b)(6) stage the September 5, 2014 letter that Plaintiff received from CIGNA. ECF No. 14-3. Plaintiff's Complaint "relies heavily upon its terms and effect," as she describes the letter in detail, quoting and paraphrasing extensively from the document. *See* ECF No. 1 ¶ 36. Furthermore, there is no concern that Plaintiff lacks actual notice

of this document; she received a copy of the document directly, the document was attached as an exhibit to Defendant's Motion to Dismiss, and Plaintiff does not challenge the authenticity of this document. ECF No. 14-3. Thus, in assessing the merits of Defendant's Motion to Dismiss, the Court will consider the contents of the September 5, 2014 CIGNA letter as being integral to the Complaint.

### B. Statute of Limitations

The parties agree that Plaintiff's ERISA claims are subject to a three-year statute of limitations pursuant to 29 U.S.C. § 1113(2). *See* ECF No. 14-1 at 13; ECF No. 17 at 8. As laid out in § 1113(2), a plaintiff may not bring an ERISA claim for breach of fiduciary duty later than "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." For a plaintiff to have "actual knowledge," she need not be aware of every detail of the alleged violation upon which her claim is based; rather, she must know the "essential facts of the transaction or conduct" giving rise to her claim. *Browning v. Tiger's Eye Benefits Consulting*, 313 Fed. App'x 656, 661 (4th Cir. 2009).

In her Complaint, Plaintiff alleges that Defendant is liable for ERISA violations for utilizing a retained asset account to distribute her benefit funds, and in "unilaterally set[ting] the interest rate." ECF No. 1 at 16–20. Plaintiff was made aware of the "essential facts" underlying her claim when she received the September 5, 2014 letter from Defendant. In that letter she was made aware that Defendant had deposited her insurance proceeds into a Cignassurance account that would earn interest comparable to a money market checking account. ECF No. 14-3 at 2; ECF No. 1 ¶ 36. She was further made aware that she would need to "write a draft for the total amount of the account" to withdraw the entirety of the insurance proceeds. ECF No. 14-3 at 3; ECF No. 1 ¶ 36. She was also provided with detailed information regarding the interest rate that

6

the Cignassurance account would earn; while she was not provided an exact rate, the letter explained that the rate was adjusted weekly, was based upon "the previous week's Bank Rate Monitor Index (BRM) or any successor money market index," and that she could call a toll-free number to receive the current rate. *Id.* at 4. Thus, on September 5, 2014, Plaintiff had actual knowledge that her funds had been put into a retained asset account rather than paid directly to her, and that they were earning an interest rate based on a money market index. As such, the statute of limitations began running on that day.

Plaintiff argues that the statute of limitations defense is an affirmative defense, and the Court should let this issue proceed to discovery. ECF No. 17 at 7. Plaintiff asserts that the question of whether she had "actual knowledge" of the alleged ERISA violations on September 5, 2014 is a "fact-intensive" inquiry. *Id.* at 8 (quoting *Browning*, 313 Fed. App'x at 661). Plaintiff points to her declaration as establishing that she "did not have actual knowledge of Cigna's actual creation of the Cignassurance[] account . . . or the fact that Cigna would pay her the . . . interest rate of .110% until after she received correspondence dated September 23, 2014." *Id.*

While in *Browning* the district court assessed the statute of limitations defense at the summary judgment stage and the Fourth Circuit described the inquiry as "fact-intensive," a court may dismiss a matter pursuant to the applicable statute of limitations at the motion to dismiss stage if "facts sufficient to rule on an affirmative defense" "are alleged in the complaint." *Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009) (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc)). Documents which are attached or integral to a complaint are "part of the pleading for all purposes." *Demetry v. Lasko Products, Inc.*, 284 Fed. App'x 14 (4th Cir. 2008). *See McCray v. Md. Dep't of Transp.*, No.

7

ELH-11-3732, 2014 WL 4660793, at *11 (D. Md. Sept. 16, 2014) (at motion to dismiss stage, in determining whether claims were barred under the applicable statute of limitations, reviewing documents which were not attached to plaintiff's complaint but were "integral to the complaint and authentic").

Here, the Court may properly consider the Complaint as well as the September 5, 2014 letter from Cigna.[5] On the face of these documents it is clear, as discussed above, that Plaintiff had actual knowledge of the essential facts underlying her Complaint on September 5, 2014. Plaintiff filed her Complaint on September 22, 2017, more than three years after she had actual knowledge of Defendant's conduct underlying her ERISA claims. Thus, those claims (Counts I-III) are barred by 29 U.S.C. § 1113(2).

### C. *Res Judicata*

Plaintiff's claims are also precluded by *res judicata*. *Res Judicata*, or claim preclusion, "precludes the assertion of a claim after a judgment on the merits in a prior suit by parties or their privies based on the same cause of action." *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991) (citing *Harnett v. Billman*, 800 F.2d 1308, 1312 (4th Cir. 1986)). The doctrine also "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding," effectively barring any claim that could have been raised during the prior litigation. *Id.*; *see also Pension Ben. Guar. Corp.*, 404 F.3d 243, 248 (4th Cir. 2005). To establish *res judicata*, the moving party must "establish three elements: (1) a final judgment on the merits in a

---

[5] While Plaintiff points to her declaration, ECF No. 17-1, as proof that she did not have actual knowledge of the alleged ERISA violations on September 5, 2014, her declaration was not attached to her Complaint nor integral to the Complaint, and the Court will not consider it. Even if the Court were to consider her declaration, however, it would still find that she had actual knowledge of the essential facts underlying her Complaint on September 5, 2014, because in her declaration, she explains that on September 5, 2014, she received a letter explaining that CIGNA "had deposited [her] life insurance benefits . . . in a Cignassurance account . . . ." ECF No. 17-1 at 5. As described above, that letter, which she acknowledges receiving, contains all the facts of the transaction giving rise to her claim.

prior suit, (2) an identity of the parties or their privies in the two suits, and (3) an identity of the cause of action in both the earlier and the later suit." *Id.*

There is no dispute that the first and second elements regarding *res judicata* are met here: the parties here were all parties in *Gordon I*, and the Court entered a final judgment in *Gordon I* which was affirmed by the Fourth Circuit. Thus, at issue in this case is the third *res judicata* prong: whether an identity is shared between the two claims.

The Fourth Circuit has adopted a transactional approach to analyze whether there is an identity of the cause of action in both the earlier and later suit. *Meekins*, 946 F.2d at 1058; *Harnett*, 800 F.2d at 1314. A claim is barred if both the first adjudication and the present claim are based on the same operative facts or series of connected transactions. *See Grausz v. Englander; Linowes & Blocher, LLP*, 321 F.3d 467 (4th Cir. 2003). A case is also barred if both claims could have been raised during the first proceeding, without consideration of whether a plaintiff had actual knowledge of the claim's existence. *See Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 248 (4th Cir. 2005). Claims may arise out of the same transaction or series of transactions even if they involve different harms or different theories or measures of relief. *Meekins*, 946 F.2d at 1058. (citing Restatement (Second) of Judgments § 24(2) (1982)).

Here, the claims are based on the same operative facts and series of connected transactions as the claims brought in *Gordon I*. While the claims brought here raise some different arguments than those in *Gordon I*—e.g., here Plaintiff challenges primarily the manner in which Defendant distributed her funds whereas in *Gordon I* she challenged the amount of funds distributed—all her claims arise from the same operative facts and series of transactions. The statements of fact presented in Plaintiff's Complaint in this case and *Gordon I* are nearly identical, *compare* ECF No. 1 at 5–12, *with Gordon I*, No. 16-RWT-238, ECF No. 1 at 5–15, and

9

state claims based on the same life insurance plan, the untimely death of Mr. Gordon, and Plaintiff's request for benefits under the plan.

Additionally, it is clear that the causes of action in the Complaint existed at the time Plaintiff filed the complaint for *Gordon I*, as Defendant had already deposited Plaintiff's funds in the Cignassurance account, the basis for her claims. ECF No. 17. Although "it is not necessary to ask if the plaintiff knew of [her] present claim at the time of the former judgement, for it is the existence of the present claim, not party awareness, that controls," *Harnett*, 800 F.2d at 1313, here, the Plaintiff was aware of Defendant's actions underlying her Complaint during the filing of *Gordon I*. Therefore, she could have filed this cause of action with *Gordon I*.

Plaintiff urges the Court to apply the Fourth Circuit's analysis in *Pittston Co. v. United States* and "balance the interests of the defendant and the courts in bringing litigation to a close," while considering "whether the facts of the current and prior claims are 'so woven together' that they constitute a single claim . . . ." 199 F.3d 694, 704 (4th Cir. 1999) (quoting Restatement (Second) of Judgments § 24 cmt. b). There, the initial claim involved an action challenging the method used by the government to calculate the initial health benefit premium that the plaintiff would have to pay for the initial year and all subsequent years. *Id.* at 699. The second action involved a constitutional challenge to payments made during three specific years. *Id.* The court held that these two claims were premised on two separate factual occurrences and were "clearly distinct in time, space, and origin . . . ." *Id.* at 705. Additionally, the different claims were based on a constitutional challenge and a calculation claim, respectively, and the court held there was no particular reason why the claims should be combined "to form a convenient trial unit," nor was there a compelling reason to deny the plaintiff an opportunity to argue the merits of its constitutional challenges. *Id.*

Plaintiff's reliance on *Pittston* is not persuasive. The factual premises of the claims in *Pittston* were distinct and the second action involved a constitutional challenge, which this case does not. The claims in Plaintiff's Complaint and *Gordon I*'s complaint are premised on the same facts: the same insurance policy, the same decedent and the same letter, which discussed both the amount of the payment (the basis of the claim in *Gordon I*) and the method of the payment (the basis of the claim here). These claims are not distinct in time, place and origin and would have made a convenient trial unit. Thus, this claim and *Gordon I* are part of the same series of connected transactions and could have been brought together, and Plaintiff's claims are barred pursuant to the doctrine of *res judicata*. *See Pension Ben. Guar. Corp.*, 404 F.3d at 248. For this reason, Plaintiff's claims are dismissed.[6]

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 14, is granted. A separate Order shall issue.

Date: July  11, 2018                                    /s/
                                                GEORGE J. HAZEL
                                                United States District Judge

---

[6] Even if not barred by *res judicata*, the Court would independently dismiss Plaintiff's Breach of Contract claim, Count IV, as Section 514(a) of ERISA preempts "all [state law claims] insofar as they . . . relate to any employee benefit plan [covered by ERISA]." 29 U.S.C. § 1144(a). *See also Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted"); *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 344 (4th Cir. 2007) (affirming the district court's grant of summary judgment on plaintiff's state law breach of contract claim, holding that because the "state-law claims merely repackage [the] ERISA claim, they are preempted by ERISA."). Count IV would also be time-barred for the same reasons discussed above. *See supra* Section III.B; *Curry v. Trustmark Ins. Co.*, 600 Fed. App'x 877, 880 (4th Cir. 2015) ("In Maryland, a breach of contract action must be filed within three years of the date it accrues."). As discussed above, Plaintiff knew that her benefit funds had been placed in a Cignassurance account with an interest rate based on a money market index, the basis of her breach of contract claim, on September 5, 2014; however, she did not file her Complaint until more than three years later.